# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WILLIAM DAVID MOBLEY,**

        **Plaintiff,**

**v.**                            **Case No:  6:18-cv-896-Orl-41LRH**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

William David Mobley ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") partially granting his application for disability benefits. Doc. 1. Claimant raises two arguments challenging a portion of the Commissioner's final decision, and, based on those arguments, requests that the matter be remanded for further administrative proceedings. Doc. No. 15, at 23–26, 30–33, 36. The Commissioner asserts that the entire decision of the Administrative Law Judge ("the ALJ") is supported by substantial evidence and should be affirmed. *Id*. at 27–30, 34–36. The undersigned **RESPECTFULLY RECOMMENDS** that the Court **REVERSE IN PART and AFFIRM IN PART** the final decision of the Commissioner and **REMAND** the case for further proceedings consistent with the Court's Order on this Report and Recommendation.

## I.      PROCEDURAL HISTORY.

On May 8, 2015, Claimant filed an application for disability insurance benefits. He alleged that he became disabled on June 11, 2013. R. 79, 200–01. His claim was denied initially and on

reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). R. 113, 117, 122. A hearing was held before the ALJ on August 15, 2017, at which Claimant was represented by an attorney. R. 40–67. Claimant and a vocational expert ("VE") testified at the hearing. *Id*.

After the hearing, the ALJ issued a partially favorable decision finding that Claimant became disabled on March 31, 2017, but that he had not established disability prior to that date. R. 23–32. Claimant sought review of the ALJ's decision by the Appeals Council. R. 194. On April 16, 2018, the Appeals Council denied the request for review. R. 1–6. Claimant now seeks review by this Court of the portion of the Commissioner's final decision finding that Claimant was not disabled prior to March 31, 2017. Doc. Nos. 1, 15.

## II.   FACTUAL BACKGROUND.

A.   Claimant's Testimony.

Claimant was born in 1962. R. 44. He completed the tenth grade, and subsequently obtained a license to work in gas. *Id*. He previously worked in air conditioning and was a sheet metal mechanic. *Id*. Thereafter, he worked in propane and natural gas. R. 45. In those positions, he sometimes had to lift over seventy-five pounds. *Id*.

Claimant alleges that he became disabled on June 11, 2013. R. 45. Since the alleged onset of his disability, he had been working on small appliances, gas appliances and fireplaces, and running gas lines. *Id*. He worked approximately twenty to thirty hours per month. *Id*. His wife accompanied him and assisted with the job. *Id*. Claimant testified that he had not done any heavy lifting since 2013, but he estimated that he could life twenty to thirty pounds, depending on his body. R. 46. At the time of the hearing, Claimant was working approximately twenty hours per month; he worked on equipment such as stoves, fireplaces, and floor heaters. R. 59.

After an accident in 2013, Claimant had herniated discs in his neck.  R. 47.  He had surgery in 2015 or 2016 where the herniated discs were replaced.  *Id.*  He still has radiating pain, although the surgery was successful and caused him to feel less pain.  R. 47, 60.  He feels the most pain in his back and his right leg.  R. 60–61.

Claimant also has arthritis in his hands, which causes difficulty in picking up items.  R. 48.  He has constant lower and middle back pain due to arthritis, which makes it uncomfortable to sit for periods of time.  *Id.*  He estimated that he can only walk thirty steps without stopping.  R. 49.  Claimant has Osgood-Schlatter disease in his right knee, which causes him to fall while walking.  *Id.*  He had a cane at the hearing, and he testified that he was prescribed the use of a cane which he uses at all times.  *Id.*  He uses a single point cane, but he also used a quad cane at one point.  *Id.*  Claimant has joint pain from arthritis in his hands, knees, ankles, back, and shoulders.  R. 50.  He also had blood clots in his lungs, which caused chest pain.  *Id.*  He also has type II diabetes, difficulty hearing, and asthma.  R. 51-52.  He experiences several headaches per week.  *Id.*  His pain affects his ability to sleep.  R. 56.  Claimant does not expect that his medical conditions would improve with treatment.  R. 63.

B.    VE's Testimony.

At the hearing, the ALJ posed a hypothetical to the VE concerning a person with the age, education, and vocational background of Claimant, who was further:

> [l]imited to lifting 20 pounds occasionally, 10 pounds frequently, sitting, standing, and walking for up to six hours in an eight-hour workday.  Limited to only occasional climbing, stooping, kneeling, and crawling.  Who must never climb ropes, ladders, or scaffolds.  Who should avoid concentrated exposure to extreme cold, to vibration, to fumes, odors, gas, and poor ventilation, and hazards such as heights and machinery and loud noises.

R. 65.  The VE testified that such an individual would not be able to perform Claimant's past work.  *Id.*  Yet, other jobs would meet those requirements, such as the light exertional level jobs of

housekeeping; fast food worker; and assembler, production. *Id*. However, upon inquiry by counsel for Claimant, the VE testified that if the hypothetical person needed a cane to ambulate, these jobs would not be available. R. 66. In addition, if the person were limited to occasional reaching, handling, and fingering bilaterally, these jobs would not be available. *Id*.

      C.      <u>The ALJ's Decision</u>.

After considering the hearing testimony and the evidence in the record, the ALJ found that Claimant met the insured status requirements of the Social Security Act through June 30, 2019. R. 25. The ALJ concluded that Claimant had not engaged in substantial gainful activity since the alleged disability onset date. *Id*.[1] The ALJ found that Claimant had the following severe impairments: dysfunction of joints and spine disorder. R. 26. These impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

Based on a review of the record, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform light work, with the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour work day; sit for 6 hours in an 8-hour work day; he could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes and scaffolds; although he should avoid concentrated exposures to extreme cold, vibration, fumes, loud noises, as well as hazards like machinery and heights. *Id*. In making this finding, the ALJ concluded that Claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms were inconsistent with the record evidence. R. 27. Thus, the ALJ concluded that the record supported Claimant's severe impairments of dysfunction of joints and

---

[1] Although Claimant worked after the alleged disability onset date, the ALJ found that there was insufficient record evidence to determine whether Claimant engaged in substantial gainful activity. However, for the efficacy of adjudication of his claim, the ALJ gave Claimant "the benefit of the doubt" and concluded that he had not engaged in substantial gainful activity since the alleged onset date. R. 25–26. The Commissioner does not challenge this conclusion.

spine disorder, consideration for which was reflected in the RFC assessment. R. 30. However, the ALJ found that Claimant's allegations regarding functional restrictions were disproportionate to the clinical findings; and the ALJ only accepted Claimant's subjective complaints insofar as they were supported by objective evidence and the record as a whole. *Id.* The ALJ outlined the objective records on which she relied, which included:

- June 2013 emergency room records after Claimant was in a car accident and presented with complaints of neck and head pain. Claimant had multiple superficial abrasions and areas of moderate tenderness. Full range of motion in all extremities was noted; a CT scan of the cervical spine showed no evidence of acute radiographic abnormality; CT scan of head was unremarkable; the primary diagnosis was osteoarthritis. *See* R. 400, 409.

- July 2013 Access Health Care of Florida records demonstrating that Claimant had left shoulder and lumbar pain prior to the accident but reported increased pain after the accident. Claimant continued treatment until July 2013 with good results; assessments included cervicalgia, pain in thoracic spine, and lumbalgia. The records include results of MRIs of the lumbar and cervical spine from June 2013, the severity of which were consistent with the findings of the state agency consultants. *See* R. 416, 420, 455–57.

- September 2013 Physical Medicine and rehabilitation specialist records; no aggressive treatment modalities were recommended due to improvement; Claimant was ambulating without an assistive device, no limping or spasticity signs were noted, and muscle strength was 5/5 in the upper limbs. Examination of the spine and upper limbs showed no focal redness, ecchymosis or hematoma, although pain and the neck and upper back with palpation and range of motion was noted. *See* R. 465.

- July 2014 Neuro Spine Institute consultation records demonstrating disc herniation at C5-C6 and C6-C7, "smaller one at C3-C." The specialist recommended cervical steroid injections because Claimant preferred non-operative management. In September 2014, Claimant received a cervical epidural injection. He also had a rheumatology consultation in September 2014, which assessed unspecified inflammatory polyarthropathy, osteoarthritis generalized in the hand, and osteoarthritis in the knees. Claimant's symptoms of osteoarthritis were improved with medicine. *See* R. 575–76, 638, 660.

- 2013 & 2014 Jewett Orthopedic Clinic records showing Claimant's longstanding history of knee pain, although the complaints were vague. Imaging of the right knee showed some evidence of mild degenerative

disease. In February 2014, the provider assessed that Claimant had reached maximum medical improvement, medicine was helping his joints significantly, although Claimant noted increased pain, especially in the hands and right knee, when it rains. *See* R. 467–71, 546.

- February 2015 Rheumatology Associates of Central Florida records showed continued treatment for osteoarthritis of Claimant's hands and knees. In May 2015, Claimant reported worsening neck pain. Claimant underwent surgery at the C5-C6 and C6-C7 levels, after which he reported doing quite well with a good range of motion. *See* R. 675, 690, 1108.

- January 2016 records of Orlando Arthritis Institute, which assessed arthropathy unspecified, generalized osteoarthritis, and osteoporosis. An x-ray of the cervical spine noted normal facet joints and vertebral bodies; an x-ray of the lumbar spine showed no evidence of facet joint arthritis. *See* R. 932.

- February 2017 annual health maintenance evaluation from Physician Associates, which noted normal gait, no clubbing or cyanosis, and both feet were normal to light touch. Claimant was prescribed medicine for osteoarthritis and was advised to lose weight and increase his activity level. *See* R. 1089–99.

R. 26–29.[2]

As to Claimant's testimony, the ALJ found that Claimant's stated use of a cane "all the time" was "inconsistent with the records prior that established onset date showing only occasional use of assistance device," but this statement is not followed by a citation to the record. R. 29. The ALJ also stated that the record demonstrated that Claimant's condition had improved since the disability onset date, "but he still experiences physical limitations due to age factors," although this statement is also not followed by record citation. *Id.*

The ALJ also considered the following opinion evidence:

---

[2] Based on this record, the ALJ noted "the objective evidence until the established onset date support an exertion at light level as identified by the State agency's medical consultant. The record shows that the claimant's condition has improved and not deteriorated warranting a reduced exertional assessment. However, additional postural and environmental limitations were assessed pursuant to contemporary records presented at the hearing level." R. 29.

- A June 2015 consultative physical evaluation, which diagnosed chronic low back pain, lumbar disc herniation, osteoarthritis of lumbar spine, cervical spine status post-surgery and osteoarthritis of the right knee. The report noted that Claimant's gait was mildly antalgic but that he ambulated without the use of an assistive device. *See* R. 748–52. The ALJ gave some weight to this assessment.

- Evaluations by state agency medical consultants who reviewed the records and who assessed that Claimant could: life/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours during an 8 hour workday; sit for 6 hours during an 8 hour workday; and occasionally stoop, kneel, crouch, crawl, claim ramps/stairs/ladders/ropes/scaffolds. *See* R. 96–110. The ALJ gave this assessment significant weight, finding it consistent with the records.

R. 29–30.

In the decision, the ALJ did not cite to or address treatment records from Physical Therapy Specialists of Hunters Creek (Amber Korb, DPT, and Cassandra Bloom, ATC, LAT) from 2015. *See* R. 906–07, 912–20, 924–28 (Exhibit 25F). Claimant went to Physical Therapy Specialists of Hunters Creek in 2015 for physical therapy. *Id.* The treatment notes from these sessions address Claimant's use of a cane. *Id.*

The ALJ ultimately concluded that Claimant was unable to perform any past relevant work. On March 31, 2017, Claimant's age category changed to that of an individual of advanced age. R. 30 (citing 20 C.F.R. § 404.1563).[3] Prior to March 31, 2017, considering Claimant's age, education, work experience, and RFC, and consistent with the testimony of the VE, the ALJ found that there were jobs existing in the national economy that Claimant could have performed, including: housekeeping; fast food worker; and assembler of production. R. 31. However, beginning on

---

[3] Advanced age is 55 or older, which the Social Security Administration considers to "significantly affect[] a person's ability to adjust to other work." 20 C.F.R. § 404.1563(e); *see also* 20 C.F.R. § 404.1568(d)(4) (explaining that in cases of persons of advanced age who are limited to sedentary or light work due to severe impairment, the administration will find that that the claimant cannot make an adjustment to other work unless the claimant has skills that can be transferred to other skilled or semiskilled work, subject to certain limitations).

March 31, 2017, based on Claimant's age category change, there were no jobs existing in significant numbers in the national economy that Claimant could perform.   R. 32.   Thus, the ALJ concluded that Claimant was not disabled prior to March 31, 2017, but he became disabled on that date and remained disabled through the date of the decision.   *Id.*

## III.   STANDARD OF REVIEW.

Once a claimant exhausts his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).   The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).   The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.   ANALYSIS.

In the Joint Memorandum, which I have reviewed, Claimant raises two assignments of error,

both of which focus solely on the Commissioner's March 31, 2017 disability date: (1) the ALJ failed to properly consider Claimant's need to use a cane to ambulate; and (2) the ALJ applied the incorrect legal standard to Claimant's testimony regarding his pain and limitations.   I find that the first assignment of error is dispositive in this case.

        A.    <u>Use of a Cane for Ambulation</u>.

The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education and work experience, whether he or she could perform other work that exists in the national economy.   *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).   "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

Claimant contends that the ALJ made erroneous findings at step four and five of the sequential evaluation process because the ALJ failed to include any consideration of Claimant's need for a cane in the RFC assessment.   Doc. No. 15, at 25.   Claimant argues that the ALJ failed to mention, discuss, or weigh the records and recommendations from Physical Therapy Specialists of Hunters Creek (Amber Korb, DPT, and Cassandra Bloom, ATC, LAT) regarding Claimant's use of a cane.   Doc. No. 15, at 23–25.   Claimant takes issues with the ALJ's finding in the decision— "[d]ue to gait abnormality, the claimant stated using [a] cane all the time, an assertion inconsistent with the records prior to the established onset date showing only occasional use of assistance device."   R. 29.

The Commissioner maintains that the ALJ's RFC assessment is supported by substantial evidence. *Id.* at 26. Apart from the records from Physical Therapy Specialists of Hunters Creek, the Commissioner argues that there is no evidence from any of Claimant's treating physicians prescribing a cane or endorsing its usage. *Id.* at 28. The Commissioner contends that based on the decision, it is evident that the ALJ considered all of the evidence of record; gave more weight to medical doctor's opinions and treatment records; and cited substantial evidence to support the RFC assessment. *Id.* at 30.

Social Security Ruling ("SSR") 96-9P provides as follows:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. . . . .

SSR 96-9P, 1996 WL 374185, at *7. The use of a hand-held assistive device can erode the occupational base for sedentary work. *See id.*

In considering the severity of a claimant's impairment and functional limitations, there is a distinction between "acceptable medical sources" and "other sources." "Acceptable medical sources are those sources [who] can provide evidence to establish a medically determinable impairment," such as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *Curry v. Comm'r of Soc. Sec.*, No. 6:13-cv-1682-Orl-41TBS, 2015 WL 269039, at *4 (M.D. Fla. Jan. 21, 2015) (citing 20 C.F.R. § 404.1513(a); SSR 06–03p, 2006 WL 2329939). "Other sources" are considered regarding the severity of a claimant's impairment and functional limitations. *Id.*

A physical therapist is an "other source," which "must be taken into consideration in the assessment of the severity of Plaintiff's impairment and his functional limitations." *Id.* (citing 20

C.F.R. § 404.1513(d); SSR 06–3P, 2006 WL 2329939).  The records and opinions of a physical therapist "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  *Id.* (citing *Jemison v. Colvin*, No. 2:13–00308–B, 2014 WL 4207739, at *9 (S.D. Ala. Aug. 25, 2014); 20 C.F.R. § 404.1513(d)). The ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning."  *Id.* (quoting *Turner v. Astrue*, No. 07-00194-CB-B, 2008 WL 4489933, at *14 (S.D. Ala. Sept. 30, 2008)).

Here, the records from Physical Therapy Specialists of Hunters Creek address Claimant's use of and need for a cane.  R. 906–07, 912–20, 924–28.  Specifically, upon initial examination on August 27, 2015, Claimant presented with complaints of significant knee pain and bilateral lower extremity weakness, reporting multiple falls.  R. 927.  DPT Korb noted that Claimant's impaired gait pattern required use of an assistive device: a single point cane.  R. 914, 924, 927.  The treatment plan included gait training using the single point cane for uneven surfaces, stairs, and curbs.  R. 920, 928.  The long-term goals included increased walking endurance of greater than 15 minutes with use of the cane.  R. 927.  On September 1, 2015, Laura Summers, M.D., co-signed the plan of care, which included gait training using the single point cane.  R. 928.

On September 18, 2015, ATC LAT Bloom noted the use of the single point cane; Claimant was given a wide base quad cane by the clinic for increased stability.  R. 909.  ATC LAT Bloom also discussed with Claimant using his left hand to hold the cane since his right knee was worse. *Id.*  On September 25, 2015, DPT Korb noted that Claimant was using a quad cane instead of a single point cane, although he still used the single point cane at home sometimes.  R. 906.

Claimant reported at that time that his right leg was still giving out on him.   *Id.*[4]

The ALJ does not cite to or address the records of the Physical Therapy Specialists of Hunters Creek in the decision; therefore, the Court cannot determine whether the ALJ considered "other source" evidence in the form of these records.   Accordingly, I recommend that the Court find that the ALJ did not provide a sufficient analysis of the medical necessity of Claimant's use of a cane.   *See, e.g.*, *Curry*, 2015 WL 269039, at \*5 (reversing the Commissioner's decision because the ALJ did not consider "other source" evidence related to the medical necessity of the claimant's use of a cane); *Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013) (finding that ALJ's failure to address claimant's need for a cane required remand, noting "[a]lthough the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected."); *see also Northington v. Colvin*, No. CIV-12-1402-W, 2014 WL 819439, at \*5 (W.D. Okla. Mar. 3, 2014) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.").[5]

---

[4]   The record also includes treatment notes from Nicola Ivey, Physical Therapist, from May 24, 2016, in which she notes Claimant's use of a cane and frequent falls.   She recommended use of a rolling walker. R. 996, 1000.   The notes also state that Claimant "ambulates c single point cane but not all the time."   R. 999.   An office note from Mitchell Supler, M.D., also states that Claimant's "[g]ait is assisted with a cane . . . ."   R. 1108.   To be sure, as noted by the ALJ, there are other records stating that Claimant at times ambulated without an assistive device.   *E.g.*, R. 462, 751, 780.   Nonetheless, "[a]lthough the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected."   *Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013).

[5]   Although the Commissioner contends that remand is unnecessary because the ALJ stated that she considered all of the evidence of record, *see* R. 25, 26, 29, this is insufficient to demonstrate that any consideration was given to the records of Physical Therapy Specialists of Hunters Creek.   *See, e.g.*, *Hirko v. Colvin*, No. 1:15-CV-580, 2016 WL 4486852, at \*4 (N.D. Ohio Aug. 26, 2016) ("[T]he ALJ failed to even mention the other source opinions offered by claimant. The fact that the ALJ indicated that she considered 'the entire record,' and included the documents containing the other source opinions in the list of record exhibits, is insufficient to demonstrate that this information factored into her analysis.").

The ALJ's decision as written precludes meaningful judicial review. Thus, I recommend that the Court reverse and remand this matter for further proceedings. *See Curry*, 2015 WL 269039, at *4; *see also Brownell v. Comm'r of Soc. Sec.*, No. 2:13-cv-173-FtM-DNF, 2014 WL 4809470, at *7 (M.D. Fla. Sept. 26, 2014).

     B.    <u>Claimant's Testimony Regarding Pain</u>.

Because remand is required on the issue of the "other source" evidence, it is unnecessary for the Court to review Claimant's remaining objections to the ALJ's decision. *See, e.g.*, *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1991). Nonetheless, I note the following.

The law in this Circuit requires an ALJ to apply the "pain standard," as follows:

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Id.* at 1561–62.

Claimant asserts that the ALJ erred in making two specific findings without record support: that "the claimant stated use cane all the time, an assertion inconsistent with the records prior to the established onset date showing only occasional use of assistance device," and that "the record shows that the claimant's condition has improved since the onset date, but he still experiences physical limitations due to age factors." Doc. No. 15, at 31–32.

As discussed above, the ALJ's decision does not state whether the ALJ considered "other source" evidence regarding Claimant's use of a cane, and thus the ALJ's rejection of Claimant's testimony regarding use of a cane is not supported by substantial evidence. *See Curry*, 2015 WL 269039, at *4. Moreover, the ALJ's statement that the record demonstrates "only occasional use

of assistance device" is not followed by a citation to the record, and thus the undersigned is unable to determine on what evidence the ALJ relied to support this conclusion.

As to Claimant's improvement since the alleged disability onset, and his continued "physical limitations due to age factors," the ALJ again cites to nothing in the record to support the finding of improvement.   R. 29.   On remand, the ALJ should be reminded of the obligation to support her findings in the decision with adequate record support.   *See Wolfe v. Comm'r of Soc. Sec.*, No. 6:11-cv-1316-Orl-DAB, 2012 WL 3264916, at *6 (M.D. Fla. Aug. 10, 2012) (the ALJ's findings "must be based on articulated reasons, with record support").

Finally, Claimant takes issue with the ALJ's conclusion that Claimant himself endorsed the ability to perform "at least light level work."   *See* R. 29.   The ALJ relied on Claimant's testimony at the hearing to support this finding, which included his testimony that he worked twenty hours per month and that he was able to lift 20 to 30 pounds, depending on his level of pain.   *See id.* Claimant's argument on this point is unpersuasive.   Although perhaps not determinative, an ALJ properly considers a claimant's work during the alleged disability period in coming to the disability determination, as well as to assess whether a claimant was able to perform substantial gainful activity.   *See, e.g., Douglas v. Comm'r of Soc. Sec.*, 486 F. App'x 72, 75 (11th Cir. 2012); *see also McEachron v. Colvin*, No. 8:15-cv-1263-T-JRK, 2016 WL 4751714, at *6 (M.D. Fla. Sept. 13, 2016) ("The ALJ did not assume that an ability to perform part-time work precludes a finding of disability.   Instead, the ALJ appropriately considered Plaintiff's part-time waitressing work in assessing Plaintiff's RFC and in finding her capable of performing other work in the national economy."); *Owens v. Comm'r of Soc. Sec.*, No. 6:16-cv-2183-Orl-DCI, 2018 WL 1000036, at *3 (M.D. Fla. Feb. 21, 2018) ("An ALJ may consider a claimant's activities of daily living when

assessing the credibility of claimant's testimony." (citing 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i))).

## V.    RECOMMENDATION.

Based on the foregoing, it is **RESPECTFULLY RECOMMENDED** that the final decision of the Commissioner be **REVERSED IN PART AND AFFIRMED IN PART.** The Commissioner's decision that Claimant was not disabled prior to March 31, 2017 should be reversed, and in all other respects the decision should be affirmed. It is **RECOMMENDED** that the case be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Court's Order on this Report and Recommendation. It is further **RECOMMENDED** that the Court direct the Clerk of Court to issue a judgment consistent with its Order on the Report and Recommendation and, thereafter, to close the file.

### <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on June 5, 2019.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record

Unrepresented Party
Courtroom Deputy